Luis Iturrino López, peticionario, *v.* Corte de Distrito de Mayagüez, Hon. F. Navarro Ortiz, Juez, demandada.

Núm. 1092.—*Sometido:* Enero 22, 1937. *Resuelto:* Febrero 17, 1937.

---

* Nota: Véase el prefacio.

*Enrique Báez García,* abogado del peticionario; *R. A. Gómez, Fiscal* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Este es un recurso de *certiorari.* Se expidió a los efectos de investigar si se habían cometido los errores de procedimiento y de jurisdicción que se atribuían a la Corte de Distrito de Mayagüez en relación con la declaración de locura del peticionario, acusado ante la misma de la comisión de un delito público. Tenemos ante nos no sólo la petición original y los alegatos del peticionario y del fiscal, si que los autos originales de la corte de distrito.

De los autos surge que el Fiscal del Distrito de Mayagüez el 19 de mayo de 1936 formuló acusación contra Luis Iturrino López imputándole un delito de ataque para cometer homicidio. El propio día, presente el acusado, se le leyó la acusación. Hizo la alegación de no culpable y solicitó juicio por jurado. La corte le nombró abogado al Lic. Báez García y señaló el juicio para junio 1º, 1936. Dice el acta además que el fiscal solicitó de la corte el nombramiento de tres peritos médicos que informaran al jurado sobre el estado mental

del acusado y que la corte nombró a tal efecto a los doctores Lassisse, Lassisse Rivera y Cabán.

El primero de junio, 1936, el acusado por su abogado manifestó a la corte que el perito médico Dr. Lassisse estaba enfermo y solicitó que se le sustituyera por el Dr. Olán Rivera. Mostró su conformidad el fiscal y la corte hizo la sustitución, señalando el juicio para el cinco del propio mes de junio.

El dos de junio los peritos médicos archivaron su informe escrito. Certificaron que el acusado estaba padeciendo de enajenación mental, del tipo paranoico. El cinco de junio se llamó la causa para vista quedando constituído el jurado. El abogado del acusado manifestó a la corte que éste le había dicho que no quería que lo defendiera abogado alguno, que lo que quería era que la corte lo declarara loco. Recordó la corte al abogado que lo había nombrado de oficio y el abogado se avino a seguir cumpliendo su deber.

Pidió entonces el fiscal a la corte que el jurado fuera exonerado mientras se resolvía sobre el estado mental del acusado de acuerdo con el artículo 439 del Código de Enjuiciamiento Criminal. Accedió la corte. Insinuó el fiscal lo que iba a probar. Se opuso el abogado defensor. Dijo:

"Nosotros alegamos que el estado de locura que define nuestra Ley provée un medio para llevar al manicomio a una persona que está loca o padece de enajenación. Es un derecho que tiene la Corte de mandarle al manicomio, pero la teoría de locura es una defensa del acusado y no una defensa del Gobierno. El Gobierno debe acusar al individuo y entonces el acusado se defiende de la responsabilidad del delito haciendo constar que el acusado es incapacitado porque estaba padeciendo de locura. El propio Código de Enjuiciamiento Criminal sostiene nuestra teoría."

Leyó el juez los artículos 439, 440, y 442 del Código de Enjuiciamiento Criminal. Leyó el abogado el 441. Manifestó el juez que lo que se iba a hacer era una investigación previa y declaró sin lugar la oposición de la defensa. Ésta tomó excepción a la resolución de la corte.

Presentó el fiscal los autos del caso civil núm. 12898 procedente de la Corte de Distrito de Aguadilla trasladado a la de Mayagüez sobre declaratoria de incapacidad de los cuales consta que el acusado de acuerdo con las alegaciones, las pruebas y la ley fué declarado incapaz para administrar sus bienes, por padecer de monomanía. Resolución de marzo 12, 1919.

Se llamó a declarar a los peritos quienes lo hicieron ampliamente, sosteniendo su informe. Nuevos informes escritos de los médicos más detallados se unieron a los autos. De ellos consta que el acusado estuvo recluído en un manicomio de la Habana, Cuba, por muchos años.

Por el mérito de la evidencia introducida pidió el fiscal a la corte "que declare al presente acusado en un estado de irresponsabilidad completa y que ordene que el mismo sea recluído en el Manicomio Insular de Puerto Rico y que no se le celebre este juicio hasta que no vuelva a la razón."

La posición de la defensa quedó expuesta como sigue:

"Lcdo. Báez: El letrado que tiene el honor de dirigirse a la corte quiere hacer constar que no ofrece prueba alguna en oposición a la prueba presentada por el Fiscal, porque entiende la defensa que es a ella a quien le corresponde investigar el estado de locura del acusado y no al ministerio Fiscal; y por el fundamento de que correspondiendo en estos casos siempre la afirmativa a la defensa y no habiendo ésta levantado ninguna cuestión respecto a la locura, toda la prueba presentada por el Fiscal es impertinente e irrelevante y no tiene otro fin que perjudicar los derechos del acusado. Sometemos el caso."

La corte resolvió de conformidad con el fiscal.

Ocho errores señala el peticionario. Sostiene en resumen que la corte adoptó un procedimiento erróneo y actuó sin jurisdicción.

A nuestro juicio el procedimiento seguido por la corte encuentra apoyo en la ley. No es éste un caso de locura peligrosa iniciado de acuerdo con la ley especial sobre la materia, Ley de 1907 (Comp. 1911, sec. 1006) enmendada por la Ley núm. 26 de 1912, enmendada a su vez por las núms.

32 de 1913 y 54 de 1928, que determina el procedimiento a seguir para proteger a los incapaces de regir sus personas y bienes, así como a la comunidad de los actos violentos que puedan realizar las personas que sufren de locura peligrosa.

Tampoco se suscitó la cuestión de locura como una de defensa en un juicio en el que El Pueblo por su fiscal mantiene la acusación. Fué levantada por el fiscal y tramitada y resuelta por la corte de acuerdo con el artículo 439 del Código de Enjuiciamiento Criminal.

Dice dicho artículo que ninguna persona puede ser juzgada, sentenciada a una pena, o penada por un delito público, mientras esté loca. Y el siguiente, 440, ordena que si cuando se haya citado a juicio para decidir una causa, o en cualquier momento durante el juicio, o cuando se haga comparecer al acusado para oír la sentencia basada en la convicción de su culpabilidad, surge alguna duda substancial respecto a la cordura del reo, el tribunal debe ordenar que esta cuestión se someta a la decisión de tres peritos que designará, y el juicio o el acto de pronunciar la sentencia deben suspenderse hasta que la cuestión quede resuelta por la decisión de dichos peritos.

Del hecho de que el artículo 441 al establecer el orden del procedimiento asigne el primer turno al letrado del acusado, no cabe concluir como pretende el peticionario que no pueda iniciar la cuestión el fiscal.

Iniciada la cuestión por la defensa, por el fiscal, o por la propia corte si llega a su conocimiento en forma que le merezca crédito, debe la corte designar los peritos, y es ante éstos que actúan como jurados y la corte que dirige el juicio, que tiene lugar el procedimiento marcado por el artículo 441 del Código de Enjuiciamiento Criminal.

Y no era necesario tampoco que al levantar la cuestión el fiscal lo hiciera mediante declaración jurada. En un caso como éste en que en la propia corte constaba el expediente de incapacidad a que hicimos referencia, tal requisito no era indispensable.

La desviación que se advierte es que en vez de constituirse a los peritos en jurado se limitó la corte a designarlos y ellos comenzaron a actuar inmediatamente y una vez que examinaron personalmente al acusado dictaminaron por escrito según ya conocemos y en el momento del juicio lo que hicieron fué someterse a un interrogatorio que confirmó en todas sus partes su dictamen, todo ello en corte abierta, estando presente el acusado y con la intervención de su abogado y del fiscal. Y esa desviación o informalidad, dadas las circunstancias que concurren, no vicia de nulidad el procedimiento. Ningún perjuicio se ocasionó al acusado.

Quizá hubiera sido mejor adoptar la norma a seguir que expuso la defensa porque la verdad es que no sólo parece deducirse de la prueba que el acusado estaba loco en el momento del juicio si que lo estaba cuando cometió el acto delictivo que se le imputa, en cuyo caso era incapaz de cometer crimen alguno de acuerdo con el artículo 39 del Código Penal, pero ello no quiere decir que no pudiera la corte limitarse a la sola investigación del momento actual y que no pudiera dictar una resolución como la que dictó ajustada a lo prescrito en el artículo 442 del Código de Enjuiciamiento Criminal, que dice: "Si los peritos declaran cuerdo al acusado, debe continuar el juicio o ser pronunciada la sentencia, según el caso. Si declaran loco al acusado, debe suspenderse el juicio o la sentencia hasta que recobre la razón, y el tribunal debe disponer que, en el ínterin, sea recluído el acusado en un manicomio, y que cuando vuelva al uso de la razón, sea entregado al alcaide de la cárcel."

*Por virtud de todo lo expuesto, debe anularse el auto expedido y devolverse los expedientes reclamados a la corte de distrito de su origen.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.